In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-3833

MARJORIE FRIEDMAN SCHERR,

*Plaintiff-Appellant*,

*v.*

MARRIOTT INTERNATIONAL, INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 CV 07384—**Charles R. Norgle**, *Judge.*

ARGUED SEPTEMBER 5, 2012—DECIDED JANUARY 7, 2013

Before BAUER, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Marjorie Friedman Scherr, an elderly woman who required the use of a walker, booked a room at the Courtyard Marriott Hotel in Overland Park, Kansas, in March 2006. She requested a room that complied with the Americans With Disabilities Act ("ADA"). The hotel had recently undergone a renovation and had installed spring-hinged door closers on the bathroom doors of some of its rooms, including the ADA-

compliant room assigned to Scherr. The spring hinge closes the door automatically when a person lets go of the door. While attempting to exit her bathroom, the door, which she had pushed open and then released to use her walker, quickly slammed shut on her, striking her and knocking her down. As a result, she underwent surgery for a broken wrist and an injured hip.

She later brought a personal injury action against the hotel, which settled in December 2010. Just prior to that settlement, however, Scherr brought a suit under Title III of the ADA seeking injunctive relief against the Overland Park Courtyard Marriott and fifty-six other Courtyard Marriotts for using the spring-hinged door closers that resulted in her injury. Marriott sought to dismiss the case on the grounds that Scherr lacked standing to bring a suit for injunctive relief and, alternatively, that the statute of limitations barred her claim. The district court ruled that Scherr had standing to sue the Overland Park Courtyard Marriott, but not the fifty-six other Marriotts, and that the applicable statute of limitations did not bar her suit. Marriott then moved for Judgment on the Pleadings on the grounds that the spring-hinged door closers Marriott used complied with the applicable ADA regulations. In December 2011, the district court granted Marriott's motion. This appeal followed. For the reasons set forth below, we hold that the spring-hinged door closers used by Marriott comply with ADA regulations, and we affirm.

## I. Background

Marjorie Friedman Scherr, a resident of Illinois, booked a room at the Courtyard Marriott Hotel in Overland Park, Kansas, in March 2006. At the time, she was seventy-six years old, suffered from a neuro-degenerative disorder and relied on a walker to enhance her mobility. Consequently, she requested an ADA-accessible room. The hotel assigned her to Room 143, and assured her it was "ADA compliant." On March 19, 2006, Scherr tried to leave the bathroom of her hotel room while using her walker. The door of the bathroom was equipped with a spring-hinged self-closing mechanism. Scherr pushed the door open with her right hand, then let go and began to exit through the threshold of the door using her walker. The door closed quickly, striking her body and causing her to fall to the floor. Scherr broke her wrist and injured her hip as a result of the fall. She later underwent surgery to address complications from the fall.

Scherr has twenty-nine relatives living in the Overland Park area, and she traveled there frequently both before and after her injuries in 2006. Given the close proximity of the Courtyard Marriott to her relatives, she wishes to return to the hotel if its rooms would be made safe for disabled guests. This intent was evinced most recently when Scherr's cousin announced that she would be married in May 2011 in Overland Park, and Scherr declared her intent to attend the wedding and her preference to stay in the Overland Park Courtyard Marriott but for its continued use of the spring-hinged door closer that led to her injury.

In 2004, Marriott renovated fifty-seven of its Courtyard Marriott hotels, and in each of the hotels (including the Overland Park location) Marriott installed spring-hinged door closer mechanisms on the bathroom doors of its ADA-accessible rooms. There is no dispute that Marriott chose to install the spring-hinged door closer on the bathroom doors rather than a hydraulic-arm door closer or a standard hinge with no door closer. There is also no dispute that the spring hinge is labeled a "Door Closer." The spring-hinge mechanism closes a door significantly faster than a hydraulic arm closer would; during the personal injury litigation that preceded this case, testimony showed that spring hinge closing mechanisms takes anywhere from 2.58 to 3.1 seconds to close a door, compared to the 5 seconds or more a hydraulic arm door closer takes. This is relevant because, as we explain in more detail below, ADA regulations contain separate provisions that govern the speeds at which "door closers" and "spring hinges" can close.

In March 2008, Scherr filed a negligence action against Marriott for her injuries in the Circuit Court of Cook County, Illinois. Marriott removed the case to the U.S. District Court for the Northern District of Illinois. In July 2010, Scherr sought to amend her complaint to include a claim under Title III of the ADA, but the request was denied. After the district court denied both parties' motions for summary judgment on the negligence action, the case settled. In November 2010, just prior to the settlement of the negligence action, Scherr filed this case against Marriott under Title III of the

ADA. Scherr seeks (1) a declaratory judgment that the Overland Park Courtyard Marriott was and is still in violation of the ADA; (2) injunctive relief against Marriott in the form of an order requiring Marriott to change the spring-hinged door closers in all fifty-seven of its renovated Courtyard hotels; and (3) costs, attorneys' fees, and expenses.

Marriott moved to dismiss Scherr's complaint, arguing that Scherr did not have standing to sue, that the statute of limitations barred her suit, and that she failed to state a claim. In June 2011, the district court granted in part and denied in part Marriott's motion and ruled that Scherr had standing to pursue her ADA claim against the Overland Park Marriott but not the other fifty-six hotels, that the statute of limitations did not bar her suit, and that she stated a claim upon which relief could be granted. Marriott then moved for judgment on the pleadings, arguing that the spring hinge on the bathroom door was in compliance with the ADA regulations issued by the U.S. Department of Justice ("DOJ") in 2010. In December 2011, the district court granted Marriott's motion, and this appeal followed.

On appeal, Scherr challenges the district court's ruling on two grounds: first, she contends that she has standing to bring an ADA suit not only against the Overland Park Courtyard Marriott, but all fifty-seven Courtyard hotels that use spring-hinged door closers on their bathroom doors; and two, that the district court erred when it granted Marriott's Motion for Judgment on the Pleadings. Marriott argues in response that the district

court correctly granted judgment on the pleadings in its favor, and also argues that Scherr does not have standing to sue the Overland Park Courtyard Marriott or any of the other Courtyard Marriotts and that the statute of limitations bars Scherr's suit. We address the arguments in turn.

## II. Discussion

We review de novo a district court's grant of judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *Olson v. Wexford Clearing Serv. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). We take all well-pleaded allegations as true and draw all reasonable inferences in favor of the non-moving party (here, Scherr). *Fail-Safe, LLC v. A.O. Smith Corp.*, 674 F.3d 889, 892 (7th Cir. 2012). We must determine if the complaint sets forth facts sufficient to support a cognizable legal theory. *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). We may take judicial notice of documents that are part of the public record, including pleadings, orders, and transcripts from prior proceedings in the case. *Gen. Elec. Capital Corp. v. Lease Res. Corp.*, 128 F.3d 1074, 1081-82 (7th Cir. 1997).

## A. Scherr has standing to sue the Overland Park Courtyard Marriott, but not the fifty-six other Courtyard Marriott hotels that use spring-hinged door closers.

The district court ruled that Scherr had standing to pursue her claim for injunctive relief under Title III of

the ADA against the Overland Park Courtyard Marriott, but not the other fifty-six Courtyard Marriott hotels that use the spring-hinged door closer. On appeal, she contends that she should be allowed to pursue her claim against not only the Overland Park Courtyard Marriot, but the other hotels as well. Marriott responds that Scherr lacks standing to sue not only the other fifty-six hotels, but the Overland Park hotel as well. For the reasons below, we affirm the district court's ruling that Scherr has standing to bring her suit against the Overland Park Courtyard Marriott but not the other hotels.

Article III of the Constitution specifies that "[t]he Judicial Power shall extend to all Cases . . . [and] Controversies . . . ." U.S. CONST., Art. III, § 2. Standing to bring and maintain a suit is an essential component of this case-or-controversy requirement. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The Supreme Court has held that a plaintiff must meet three key requirements to establish standing: the plaintiff must show (1) injury in fact, which must be concrete and particularized, and actual and imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) redressability. *Id.* at 560-61. The party invoking federal jurisdiction bears the burden of establishing these elements. *Id.*

The second and third elements are not at issue here, and the only question is whether Scherr, assuming *arguendo* that Marriott is actually violating the ADA, is presently suffering a sufficiently "concrete and particularized" and "actual or imminent" injury to satisfy the Court's "injury in fact" requirement. Scherr seeks

injunctive relief, and to establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a "real and immediate" threat of future violations of their rights (in this case, Scherr's rights under the ADA). *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Scherr was injured as a result of what she believed (quite legitimately, at the time) was a violation of the ADA standards governing door closers, but the Supreme Court has held that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Lujan*, 504 U.S. at 564 (internal quotations omitted). Furthermore, the Court has clarified that plaintiffs' professions of an "intent to return to the places they had visited before—where they will presumably, this time, [suffer the same injury they suffered before]—is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specifications of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id.* (quotations and citations omitted) (emphasis original).

However, the Supreme Court later distinguished *Lujan* and clarified that a plaintiff's "conditional statements"—that they would visit a place but for ongoing violations—cannot "be equated with the speculative 'some day intentions'" that were insufficient to show injury in fact in *Lujan. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000). Thus,

as the Second Circuit has held, a plaintiff must allege "past injury under the ADA"; show that "it is reasonable to infer from her complaint that this discriminatory treatment will continue"; and show that "it is also reasonable to infer, based on the past frequency of her visits and the proximity of [the public accommodation] to her home, that she intends to return to [the public accommodation] in the future." *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008).

Here, the facts show that Scherr has standing to pursue her claim against the Overland Park Courtyard Marriott. Scherr stated in her complaint that she would use the Overland Park Courtyard Marriott but for the alleged continuing ADA violations there. She is aware that the hotel continues to use the spring-hinged door closers, and her future plans (as stated at the time the complaint was filed) are much more specific than the vague invocations that troubled the Supreme Court in *Lujan*: much of her extended family lives in the area and the Overland Park Courtyard Marriott is close to them. Furthermore, Scherr's discussion of her cousin's then-upcoming wedding is sufficient to support a plausible inference that Scherr would have liked to return to the hotel but for its continued use of the spring hinges. Given Scherr's past travel history and her affirmative desire to stay at the hotel but for the alleged violations, on these facts, Scherr has standing to sue the Overland Park Courtyard Marriott. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1037 (9th Cir. 2008) (holding that a plaintiff established standing when she demon-

strated her intent to return to a city and to stay at the hotel she was suing if it were to be made accessible).

Scherr's standing to sue the Overland Park Courtyard Marriot does not, however, extend to the other fifty-six Courtyard Marriott hotels that use the spring-hinged door closers. Scherr argues that she need not engage in the "futile gesture" of visiting the other fifty-six Courtyard Marriotts that she knows use spring hinges as door closers as long as Marriott has no intention of complying with the ADA. While we agree that Scherr need not engage in the "futile gesture" of traveling to each of the other fifty-six Courtyard Marriotts to establish that she has actual knowledge of an alleged ongoing violation at each of the facilities, as we held above she still must assert an intent to return to the particular place (or places) where the violations are alleged to be occurring. Scherr shows such intent with respect to the Overland Park Courtyard Marriott, but she makes no such showing with regard to any of the other fifty-six Courtyard Marriotts. While she lists a number of trips she has taken over the past few years to various places (some of which have Courtyard Marriotts), at no point does she claim that she would visit a particular Courtyard Marriott but for the alleged ADA violations, and she does not show an intent even to return to any geographic area where another Courtyard Marriott is located. Absent such a showing, she cannot establish standing to pursue her claim against the other hotels. *See Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) ("Although plaintiffs need not engage in the 'futile gesture' of visiting a building con-

taining known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would like to visit the building in the imminent future but for those barriers.") (citations omitted).

### B.   The statute of limitations does not bar Scherr's suit.

We next consider Marriott's contention that Scherr's suit is barred by the statute of limitations. The ADA does not contain a specific statute of limitations, and thus "the most appropriate state limitations period applies." *Soignier v. Am. Bd. of Plastic Surgery*, 92 F.3d 547, 550 (7th Cir. 1996). Because Scherr's claim is most closely related to a personal injury action, we use Illinois's two-year statute of limitations for personal injuries. *Id.* at 551. It is undisputed that Scherr brought her ADA claim in November 2010, more than two years after her personal injury claim in March 2008, and more than four years after her actual injury in March 2006. Marriott contends that Scherr's claim is time-barred because she knew of the alleged problem with the spring-hinged doors long before she filed her personal injury action, let alone her ADA claim. Scherr argues in response that, for a plaintiff seeking injunctive relief from ongoing violations, the cause of action continues to accrue each day the defendant remains in violation of the ADA.

While the Seventh Circuit has not directly addressed this issue before, the statute itself makes clear that injunctive relief under Title III of the ADA (and only injunc-

tive relief—damages are not available under Title III) is available to "any person who is being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination." 42 U.S.C. § 12188(a)(1). As the Ninth Circuit has observed, "[b]y employing the phrases 'is being subjected to' and 'is about to be subjected to,' the statute makes clear that either a continuing or a threatened violation of the ADA is an injury within the meaning of the Act. A plaintiff is therefore entitled to injunctive relief to stop or to prevent such injury." *Pickern v. Holiday Quality Food, Inc.*, 293 F.3d 1133, 1136 (9th Cir. 2002). In her complaint, Scherr alleged that she is currently aware of what she believes to be ongoing ADA violations at the Overland Park Courtyard Marriott, and that she would return to the hotel but for these ongoing violations. Because the violations Scherr alleges are continuing, the applicable statute of limitations does not bar her claim.

## C. Because the spring-hinged door closer complied with the applicable ADA regulations, Scherr's claim fails as a matter of law.

### 1. Regulatory framework.

Finally, we turn to the merits of Scherr's complaint against the Overland Park Courtyard Marriott. Title III of the ADA prohibits discrimination on the basis of disability in places of public accommodation. 42 U.S.C. §§ 12181-89. Congress delegated responsibility to the DOJ to issue regulations to enforce Title III. The regula-

tions must be consistent with a set of guidelines put forth by the Architectural and Transportation Barriers Compliance Board ("the Board"). The guidelines are called the "Americans with Disabilities Act Accessibility Guidelines" ("ADAAG"). Consistent with the Board's guidelines, the DOJ issued a set of regulations in 1991 ("the 1991 Standards"), and in 2004, the Board issued revisions to the 1991 Standards. In 2010, the DOJ adopted the 2004 ADAAG revisions into its regulations ("the 2010 Standards"). Compliance with the 2010 Standards became mandatory for new construction and renovations in 2012, but for the period between 2010 and 2012, entities covered by the Standards could comply with either the 1991 or the 2010 Standards, and the parties here agree that both sets of Standards can be used to determine compliance as a matter of law.

The 1991 Standards dictate that all doors with closing mechanisms must have a "sweep period" that takes at least 3 seconds for a door to move from an open position of 70 degrees to a point 3 inches from the latch of the door. Specifically, the 1991 Standards state:

> **4.13.10 Door Closers.** If a door has a closer then the sweep period of the closer shall be adjusted so that from an open position of 70 degrees, the door will take at least 3 seconds to move to a point 3 in (75mm) from the latch, measured to the leading edge of the door.

1991 Standards § 4.13.10. The 1991 Standards do not have a separate closing speed specified for spring hinges, and the 1991 Standards do not discriminate between spring

hinges and other types of door closers such as hydraulic arm closers.

However, the 2010 Standards do set forth separate closing speeds for spring hinges and door closers, which the Standards now treat as separate devices. The 2010 Standards state that the time "Door Closers and Gate Closers" move from an open position of 90 degrees to a position of 12 degrees from the latch must be at least 5 seconds, and "Spring Hinges" must take at least 1.5 seconds to move from an open position of 70 degrees to a closed position.[1] Specifically, the 2010 Standards state:

> **404.2.8 Closing Speed.** Door and gate closing speed shall comply with 404.2.8.
>
> **404.2.8.1 Door Closers and Gate Closers.** Door closers and gate closers shall be adjusted so that from an open position of 90 degrees, the time required to move the door to a position of 12 degrees from the latch is 5 seconds minimum.
>
> **404.2.8.2 Spring Hinges.** Door and gate spring hinges shall be adjusted so that from the open position of 70 degrees, the door or gate shall move to the closed position in 1.5 seconds minimum.

U.S. Department of Justice, 2010 ADA Standards For Accessible Design (2010), at § 404.2.8. Neither party

---

[1] The 2010 Standards offer neither an explanation nor a comment about why this change was made, and since the DOJ did not intervene in this case, we have no guidance from it on why the regulations changed or what bearing the change should have on interpreting them.

disputes that the spring hinges used by Marriott comply with § 404.2.8.2 of the 2010 standards but not § 404.2.8.1, the provision that regulates door closers.

### 2. The spring hinges comply with the 2010 Standards; therefore, Scherr's claim fails as a matter of law.

Scherr does not dispute that the spring hinges used by Marriott comply with the 2010 standards; instead, she argues that the spring hinges used as door closers must comply with both the Spring Hinge and Door Closer provisions of the 2010 Standards. In statutory construction cases, we begin with "the language [of the statute] itself [and] the specific context in which that language is used." *McNeil v. United States*, 131 S. Ct. 2218, 2221 (2011) (quotations omitted).[2] When we do not have statutory definitions available,

> we accord words and phrases their ordinary and natural meaning and avoid rendering them meaning-less, redundant, or superfluous; we view words not in isolation but in the context of the terms that surround them; we likewise construe statutes in the context of the entire statutory scheme and avoid

[2] Here, we are asked to interpret a regulation, and the Supreme Court has held that we should show "great deference to the interpretation given the statute by the officers or agency charged with its administration. . . . When the construction of an administrative regulation rather than a statute is in issue, deference is even more clearly in order." *Udall v. Tallman*, 380 U.S. 1, 16 (1965) (internal quotations omitted).

rendering statutory provisions ambiguous, extraneous, or redundant; we favor the more reasonable result; and we avoid construing statutes contrary to the clear intent of the statutory scheme.

*In re Merchants Grain, Inc.*, 93 F.3d 1347, 1353-54 (7th Cir. 1996) (citations omitted). When the language of a statute is plain, we enforce it according to its terms. *See Greenfield Mills, Inc. v. Macklin*, 361 F.3d 934, 954 (7th Cir. 2004). When a statute delineates specific obligations, "we will not read a catchall provision to impose general obligations" that include or supersede the enumerated obligations, and we should hesitate to adopt "an interpretation of a congressional enactment which renders superfluous another portion of that same law." *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2330 (2011).

In light of these canons of statutory construction, the most reasonable interpretation of the 2010 Standards requires that we treat spring hinges and door closers separately and apply the separate standards accordingly. Contrary to the 1991 Standards, which had a general provision to govern all door closers, the 2010 Standards specifically carved out a separate regulation governing the closing speed of a spring hinge. This specific carve-out strongly undercuts Scherr's argument that the DOJ intended that spring hinge devices to be regulated both by the specific Spring Hinge provision and the general Door Closer provision. If, as the district court noted, the DOJ intended to regulate the closing speeds of spring hinges under the Door Closer provision, it would not have needed to add a separate,

specific provision, which provided a different closing speed, to regulate spring hinges. Furthermore, the Spring Hinge provision specifically refers to spring hinges as "door and gate spring hinges," which indicate that the DOJ expected spring hinges to be used as door closers and therefore carved out a specific regulation for them. If we were to read the statute as Scherr urges and apply the Door Closer provision to spring hinges, it would render superfluous the separate Spring Hinge provision and the different closing time specifically established for spring hinges. Because we do not construe regulations in such a way as to render other provisions of the regulations meaningless or super-fluous, Scherr's claim fails as a matter of law.[3] *See id.* at 2330; *see also In re Willet*, 544 F.3d 787, 792 (7th Cir. 2008).

### III. Conclusion

The district court correctly ruled that Scherr had standing to pursue a claim against the Overland Park Courtyard Marriott but not the fifty-six other Courtyard Marriotts she sought to sue. Additionally, Scherr's com-plaint is not barred by the statute of limitations. The district court correctly ruled that, since the spring-hinged door closers used by Marriott are in compliance with

---

[3] The complicated distinction between hydraulic door closers and spring-hinged door closers and their varying functions begs the question of why a simple standard hinge wouldn't be the simplest way to open and close an interior bathroom door. Such a common device may be too simple to regulate.

the DOJ's 2010 Standards, Scherr's claim fails as a matter of law. The district court's orders are therefore AFFIRMED.