RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0151p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

DEREK BLOCK,

*Plaintiff*,

KENNETH M. MILLER; HOUSE OF GLUNZ, INC.,

*Plaintiffs-Appellants*,

> No. 22-3852

*v.*

JAMES V. CANEPA, et al.,

*Defendants*,

DAVE YOST, Attorney General of Ohio; ANDY WILSON, Director, Ohio Department of Public Safety,

*Defendants-Appellees*,

WHOLESALE BEER & WINE ASSOCIATION OF OHIO,

*Intervenor Defendant-Appellee.*

───────────────

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:20-cv-03686—Sarah Daggett Morrison, District Judge.

Argued: May 5, 2023

Decided and Filed: July 14, 2023

Before: MOORE, CLAY, and MATHIS, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** James A. Tanford, EPSTEIN, COHEN, SEIF & PORTER, LLP, Bloomington, Indiana, for Appellants. Marissa J. Palumbo, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Defendant Appellees. **ON BRIEF:** James A. Tanford, Robert D. Epstein, EPSTEIN, COHEN, SEIF & PORTER, LLP, Indianapolis, Indiana, for Appellants. Marissa J. Palumbo, Kaitlyn M. Kachmarik, OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Defendant Appellees. John J. Kulewicz, Timothy J. Bechtold, Henrique A. Geigel, Emily J.

Taft, Maxwell H. King, VORYS, SATER, SEYMOUR AND PEASE LLP, Columbus, Ohio, for Intervenor Appellee.

CLAY, J., delivered the opinion of the court in which MATHIS, J., joined and MOORE, J., joined in part.  MOORE, J. (pp. 18–20), delivered a separate opinion concurring in part and dissenting in part.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.  Plaintiffs Kenneth M. Miller and House of Glunz, Inc. challenge the constitutionality of Ohio liquor laws preventing out-of-state wine retailers from shipping wine directly to Ohio consumers, Ohio Rev. Code Ann. §§ 4301.01(A)(2), 4303.03, 4303.12, 4303.27 (the "Direct Ship Restriction"), and prohibiting individuals from transporting more than 4.5 liters of wine into Ohio during any 30-day period, Ohio Rev. Code Ann. § 4301.20(L) (the "Transportation Limit").[1]  Through this appeal, Plaintiffs challenge the district court's holdings that:  (1) the Direct Ship Restriction is constitutional under binding Sixth Circuit precedent; (2) the Director of the Ohio Department of Public Safety is entitled to Eleventh Amendment immunity from Plaintiffs' claims; and (3) Plaintiffs lack standing to challenge the Transportation Limit.  For the reasons set forth below, we **AFFIRM IN PART** and **REVERSE IN PART**.

## I.  BACKGROUND

### A.  Factual Background

#### 1.  The Parties

Miller describes himself as "an active wine consumer who looks for good wines at good prices wherever [he] can find them."  Miller Decl., R. 52-2, Page ID #1271.  He asserts that he wants to order wine from out-of-state retailers but cannot because of the Direct Ship Restriction. He also asserts that he "would like to be able to buy wine in other states when [he] visit[s] and transport that wine back into Ohio for [his] personal use without risking committing a criminal offense or being subject to fines and penalties."  Miller Decl., R. 34-5, Page ID #302.  The

---

[1]Derek Block was dismissed as a plaintiff in 2021.

second plaintiff in this action, House of Glunz, is an Illinois wine retailer.  House of Glunz alleges that it wishes to ship wine directly to Ohio consumers but cannot because of the Direct Ship Restriction.

Defendant Dave Yost is Ohio's Attorney General.  Intervenor-Defendant Wholesale Beer & Wine Association of Ohio (the "Association") "is an incorporated non-profit membership association of independent, family-owned distributor companies that are licensed Ohio beer and wine wholesalers."  Raber Decl., R. 15-2, Page ID #80.  The Association's membership "includes a majority of the licensed wine wholesalers in the State of Ohio."  *Id.* Defendant Thomas Stickrath was the Director of the Ohio Department of Public Safety at the start of this litigation, but he left that office after Plaintiffs filed this appeal.  His successor, Andy Wilson "is automatically substituted as a party" for Stickrath in his official capacity. Fed. R. App. P. 43(c)(2).

## 2.  Ohio's Liquor Control Laws

"Like many other states, Ohio has a three-tier system for distributing alcoholic beverages: Manufacturers supply products to [wholesale] distributors, who in turn supply products to retailers for sale to the public."  *Tri-Cnty. Wholesale Distribs., Inc. v. Wine Grp., Inc.*, 565 F. App'x 477, 478 (6th Cir. 2012) (citing Ohio Rev. Code Ann. §§ 1333.82, *et seq.*); *see Granholm v. Heald*, 544 U.S. 460, 466 (2005) (describing the three-tier system).  Through this regulatory scheme, the Ohio Division of Liquor Control ("Liquor Control") issues a variety of permits that authorize retailers to sell wine to the public.  *See* Ohio Rev. Code Ann. §§ 4303.01, *et seq.*

Most out-of-state retailers, including House of Glunz, cannot ship directly to Ohio consumers.  The only out-of-state retailers permitted to ship wine and beer directly to Ohio consumers are retailers who had a permit to do so under a previous statutory scheme and were "grandfathered" into the current permit system.  Chung Decl., R. 53-2, Page ID #4124.  By contrast, in-state retailers holding a C-2 permit are permitted to ship wine directly to Ohio consumers.  Ohio Rev. Code Ann. §§ 4301.01(A)(2), 4303.12, 4303.27.  Ohio "admits that retailers located solely outside Ohio cannot obtain a C-2 permit from" Liquor Control.  Defs.' Answer, R. 37, Page ID #362.  However, neither the parties nor the district court have addressed

whether Liquor Control is statutorily prohibited from issuing C-2 permits to out-of-state retailers, or whether it simply refuses to do so. The statute that authorizes the granting of C-2 permits is silent on the matter. *See* Ohio Rev. Code Ann. § 4303.12.

In addition to the Direct Ship Restriction, Ohio law also prohibits consumers from transporting into Ohio "more than one liter of spirituous liquor, four and one-half liters of wine, or two hundred eighty-eight ounces of beer in any thirty-day period . . . ." Ohio Rev. Code Ann. § 4301.20(L). Plaintiffs allege that Miller collects "wines from Bordeaux, California and Oregon" and that "[t]he wines [Miller] collects are primarily offered for sale online from out-of-state retailers." Compl., R. 1, Page ID #3. Miller avers that he would like to bring more wine into Ohio from out of state than the Transportation Limit allows.

## B. Procedural Background

Plaintiffs commenced this action under 42 U.S.C. § 1983 in July 2020. Through their complaint, Plaintiffs sued the Ohio state officials whom they allege enforce Ohio's liquor laws: Superintendent of Liquor Control Jim Canepa; Ohio Attorney General Dave Yost; then Director of the Ohio Department of Public Safety Thomas Stickrath; and Chairperson of the Ohio Liquor Control Commission Deborah Pryce. Plaintiffs asserted that the Direct Ship Restriction and the Transportation Limit "discriminate[] against interstate commerce, protect[] local economic interests, and violate[] the Commerce Clause." Compl., R. 1, Page ID #2. Accordingly, Plaintiffs sought "a declaratory judgment that the [laws are] unconstitutional and an injunction barring the defendants from enforcing" both laws. *Id.* Shortly after Plaintiffs filed their complaint, the district court granted the Association's unopposed motion to intervene as defendant. Through that motion, the Association argued that its intervention would allow it to "assert" its "essential, independent and important voice . . . in this litigation." Association's Mot. to Intervene, R. 15, Page ID #61.

### 1. Motion to Dismiss

In September 2020, Defendants filed a motion to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In that motion, Defendants argued that Stickrath, Canepa, and Pryce were entitled to immunity under the Eleventh Amendment.

"[T]he 'Eleventh Amendment bars suits against a state or its agencies in federal court[.]'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 732 (6th Cir. 2022) (alteration in original) (quoting *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 681 (6th Cir. 2018)).  That bar generally applies "to state officials sued in their official capacity."  *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)).

Plaintiffs opposed Defendants' motion to dismiss.  Before the district court, they argued that they could sue Stickrath, Canepa, and Pryce under the *Ex parte Young* exception to Eleventh Amendment immunity.  *See Ex parte Young*, 209 U.S. 123 (1908).  "*Ex parte Young* permits a private party to seek prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights."  *Skatemore*, 40 F.4th at 733 (citing *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417 (6th Cir. 2019)).  The *Ex parte Young* exception "does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (quoting *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996)).

The district court granted the motion and dismissed the claims against Stickrath, Canepa, and Pryce.  As is relevant to the instant appeal, the district court acknowledged that the "[t]he Department of Public Safety, under Director Stickrath's direction, does conduct investigations and related law enforcement actions against suspected violators of Ohio liquor laws . . . and is actively involved in enforcing Ohio's liquor control laws."  Op. and Order, R. 33, Page ID #266 (quotations and citations omitted).  Nevertheless, the district court determined that there was not "a realistic possibility" that Stickrath and his department would enforce the challenged statutes. *Id.*

Defendants also argued that Plaintiffs lacked Article III standing.  The district court determined that House of Glunz had standing with respect to the Direct Ship Restriction and therefore allowed Plaintiffs to proceed with their challenge to that statute.  Op. and Order, R. 36, Page ID #344–53.  However, it held that Plaintiffs "fail[ed] to sufficiently allege a factual predicate establishing a credible threat of prosecution" with respect to the Transportation Limit.

*Id.* at Page ID #356.   Accordingly, the district court dismissed Plaintiffs' challenge to the Transportation Limit for lack of Article III standing.

## 2. Cross-Motions for Summary Judgment

After discovery, the parties filed cross-motions for summary judgment as to the Direct Ship Restriction.  In addition to moving for summary judgment, Plaintiffs also sought relief from the district court's dismissal of:  (1) Stickrath as a defendant; and (2) Plaintiffs' challenge to the Transportation Limit.  The district court entered judgment in Defendants' favor and denied Plaintiffs' motion for relief.

To support their motion for relief, Plaintiffs relied on evidence that Yost provided during discovery.  That evidence included Yost's answer to an interrogatory in which he described times that Ohio "could" enforce the statutes.  Def.'s Answer to Interrog., R. 52-34, Page ID #4035.  It also included a spreadsheet detailing arrests and citations for Transportation Limit violations made between 2017 and 2020.  The spreadsheet showed that between 2017 and 2020, the Department of Public Safety prosecuted or cited five people for violating the Transportation Limit.  Each of those incidents involved spiritous liquor, and none involved wine or beer.

The district court was not persuaded that this evidence entitled Plaintiffs to relief from its order.  It held that "[t]he interrogatory response sets out the already-acknowledged fact that the Ohio Department of Public Safety enforces Ohio's liquor control laws . . . and provides several scenarios in which it *could* enforce the Transportation Limit—none of which encompass" what Miller purported to want to do.  Op. and Order, R. 91, Page ID #5187.  As to the spreadsheet, the district court concluded that it "fail[ed] to establish a history of enforcing the Transportation Limit against individuals engaging in Mr. Miller's desired conduct," *i.e.*, transporting *wine* for personal use.  *Id.*  The district court therefore denied Plaintiffs' motion for relief.

With respect to the cross-motions for summary judgment, one of the central arguments was whether this Court's opinion in *Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020), was controlling.  In *Lebamoff*, this Court upheld a Michigan law that is nearly identical to Ohio's Direct Ship Restriction.  *See id.* at 867.  On summary judgment, Plaintiffs argued that the district court should decline to follow *Lebamoff* because it is inconsistent with

binding Supreme Court and Sixth Circuit precedent. The district court replied succinctly, asserting that, "[o]f course[] *Lebamoff* is binding." Op. and Order, R. 91, Page ID #5197. Specifically, the district court observed that *Lebamoff* was the Sixth Circuit's first published opinion applying the standard announced in *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449 (2019).

Acknowledging that *Lebamoff* was "good law," the district court concluded that "[t]he portions of Ohio law at issue here are substantively identical to the Michigan law discussed in *Lebamoff*." Op. and Order, R. 91, Page ID #5200–01. Accordingly, not only was *Lebamoff* "controlling," it was "dispositive." *Id.* at Page ID #5200. The district court therefore concluded that "Ohio's Direct Ship Restrictions can be justified on legitimate nonprotectionist grounds, and their predominant effect is not protectionism," and they therefore passed constitutional muster. *Id.* at Page ID #5202. It issued summary judgment in Defendants' favor. *Id.*

Plaintiffs' timely appeal followed.

## II.  DISCUSSION

### A.  Standard of Review

The Court reviews questions of standing and Eleventh Amendment immunity *de novo*. *Universal Life Church Monastery Storehouse v. Nabors*, 35 F.4th 1021, 1031 (6th Cir. 2022) (standing); *Skatemore*, 40 F.4th at 731 (Eleventh Amendment immunity).

We review a district court's grant of summary judgment *de novo*. *Levine v. DeJoy*, 64 F.4th 789, 798 (6th Cir. 2023). A district court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). No genuine dispute of material fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "Once the parties present evidence, the Court's 'function is not [] to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Levine*, 64 F.4th at 798 (alteration in original) (quoting *White v. Baxter*

*Healthcare Corp.*, 533 F.3d 389, 390 (6th Cir. 2008)).  In making that determination, the Court "must draw all inferences in the light most favorable to the non-moving party."  *Id.* (citing *Matsushita*, 475 U.S. at 587).  "However, 'the mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the' non-moving party."  *Id.* (alteration in original) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

**B.  Analysis**

**1.  Plaintiffs' Standing to Challenge the Transportation Limit**

The district court dismissed Plaintiffs' challenge to the Transportation Limit for lack of Article III standing.  "Article III of the United States Constitution limits federal courts' jurisdiction to certain 'Cases' and 'Controversies' . . . ."  *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016) (quoting U.S. Const. art. III, § 2).  "The doctrine of standing gives meaning to these constitutional limits by 'identify[ing] those disputes which are appropriately resolved through the judicial process.'"  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) (alteration in original) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).  "Where there is a facial attack on the pleadings for lack of standing, as there is here, [the Court] must accept the allegations set forth in the complaint as true, drawing all inferences in favor of the plaintiff."  *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) (quotations omitted).

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan*, 504 U.S. at 560–61).  In this case, the district court focused on the first of these requirements, finding that Plaintiffs has not shown an injury in fact that was actual or imminent.

When a plaintiff brings a pre-enforcement challenge, "[a]n allegation of future injury may suffice" to show an injury in fact "if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013)). Thus, "an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Id.* To that end, the Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 299 (1979)). To determine whether a plaintiff faces a credible threat of prosecution, the Supreme Court considers whether the plaintiff's fear is "imaginary or wholly speculative." *Id.* at 165 (quoting *Babbitt*, 442 U.S. at 298).

Plaintiffs who allege that their injury is a prospective prosecution must plead facts sufficient to establish a "reasonabl[e]" fear of prosecution. *Russell*, 784 F.3d at 1049. A fear of prosecution is reasonable if it is "founded in fact." *Id.* (quoting *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1395 (6th Cir. 1987)). A plaintiff can demonstrate that his fear of prosecution is founded in fact by pointing to "past enforcement against the same conduct . . . ." *Susan B. Anthony List*, 573 U.S. at 164.

In this case, the district court held that "Miller fail[ed] to sufficiently allege a factual predicate establishing a credible threat of prosecution for the transport count. Thus, he does not show an injury in fact for Article III standing." Op. and Order, R. 36, Page ID 356. Plaintiffs challenge that holding on appeal.

To support their allegation that Miller faced a credible threat of prosecution, Plaintiffs submitted the following: (1) a 2020 post on the website Reddit in which a poster claimed to have been charged with illegally transporting a bottle of bourbon into Ohio from Kentucky; (2) a 2019 press release by the Ohio Investigative Unit and Liquor Control detailing charges they brought against five Ohioans for illegally reselling liquor; (3) law firm webpages offering to defend individuals against charges brought under the Transportation Limit, along with Miller's sworn declaration that "[i]n [his] experience, lawyers do not advertise specific services unless there is a

need for them, which means people are being arrested for unlawful transportation of alcohol," Miller Decl., R. 34-5, Page ID #303; (4) Yost's interrogatory response explaining that the Transportation Limit *could* be enforced if an individual was transporting wine into the State to unlawfully sell at retail, if the individual was transporting illegal narcotics in addition to an excess amount of wine, or if the illegal transportation resulted in serious death or injury; and (5) spreadsheets produced during discovery showing several arrests and one administrative citation for violations of the Transportation Limit between July 2017 and July 2020.

In two separate orders, the district court held that Miller failed to establish that he faced a credible threat of prosecution. With respect to the Reddit post, the district court asserted that "[b]ourbon, not wine, is the subject of the Reddit post. And because the post is undated, the Court cannot discern whether the events described therein are tempora[lly] proximate to this case so as to indicate an increased risk of prosecution." Op. and Order, R. 36, Page ID #355. However, the district court neglected to consider that Miller declared under penalty of perjury that the post came from 2020. In ruling on a motion to dismiss, it should have accepted Miller's averment as true. *See Mosley*, 942 F.3d at 756.

The district court next dismissed the relevance of the press release announcing the prosecutions of Transportation Limit violations. Those prosecutions, the district court observed, concerned the *resale* of beer or liquor, which Miller does not purport to want to do. As to the law firms that advertised services for people charged with violating the Transportation Limit, citing no authority, the district court held that "[s]uch advertisements do not evince a credible threat of prosecution; only actual prosecutions do." Op. and Order, R. 36, Page ID #356.

Later, when it denied Plaintiffs' motion for relief, the district court determined that Yost's interrogatory response did not establish a credible threat of prosecution because it "provides several scenarios in which [Ohio] *could* enforce the Transportation Limit—none of which encompass an individual of legal age transporting more than 4.5 liters of wine into the state for personal consumption, as Mr. Miller desires to do." Op. and Order, R. 91, Page ID #5187. As to the spreadsheet of arrests, the district court found that because the spreadsheet detailed criminal proceedings against people transporting spiritous liquor rather than wine, "the

spreadsheet of arrests fail[ed] to establish a history of enforcing the Transportation Limit against individuals engaging in Mr. Miller's desired conduct." *Id.*

The district court's analysis was flawed. At the pleading stage, Miller "needed only to plead general facts that would suggest that . . . [he] reasonably feared [actions] might be taken as a result of [his desired] conduct." *Russell*, 784 F.3d at 1049. In other words, Miller had to show that his "fear of prosecution was not 'imaginary or wholly speculative' . . . ." *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt*, 442 U.S. at 298). Miller met that burden. First, he provided evidence that Ohio *does prosecute* violations of the Transportation Limit. Second, neither Defendants nor the district court cite any authority supporting an argument that Miller was obligated to show that Ohio prosecuted people for transporting wine, rather than liquor; he presented evidence that Ohio prosecutes violations of the Transportation Limit, which is the statute at issue in this appeal. Indeed, Defendants have not suggested that they deliberately prosecute violations for liquor but not for wine. Third, Yost's interrogatory response provides examples where the State could, and potentially would, prosecute a wine consumer for violating the Transportation Limit. Finally, Defendants have not indicated that they, as a matter of policy, choose not to prosecute people engaging in Miller's desired conduct.

In sum, Miller has provided evidence that Ohio prosecutes violations of the Transportation Limit. Defendants and the district court respond that Miller has provided only evidence that Ohio prosecutes Transportation Limit violations involving resellers or involving liquor. But to Miller, that fact might be simply a coincidence, especially considering the small sample size of arrests. Thus, accepting Plaintiffs' allegations as true and drawing all inferences in their favor, *Mosley*, 942 F.3d at 756, Miller's fear of prosecution is neither unreasonable, *see Russell*, 784 F.3d at 1049, nor is it "imaginary or wholly speculative," *Susan B. Anthony List*, 573 U.S. at 165 (quoting *Babbitt*, 442 U.S. at 298). We therefore reverse the district court's dismissal of Plaintiffs' challenge to the Transportation Limit and remand for further proceedings. Because the district court addressed only the injury-in-fact component of standing, we decline to address the remaining two components needed to establish Article III standing.

**2. Eleventh Amendment Immunity**

"[T]he 'Eleventh Amendment bars suits against a state or its agencies in federal court[.]'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 732 (alteration in original) (quoting *Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 681 (6th Cir. 2018)). That bar generally applies "to state officials sued in their official capacity." *Id.* (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)). However, Eleventh Amendment immunity "is not limitless." *Id.* at 733. "Courts have carved out three exceptions to Eleventh Amendment immunity," one of which is the *Ex parte Young* doctrine. *Id.*; *see Ex parte Young*, 209 U.S. 123 (1908). Under *Ex parte Young*, a private party may seek "prospective injunctive relief against state officials in their official capacity before those officials violate the plaintiff's federal constitutional or statutory rights." *Skatemore*, 40 F.4th at 733 (citing *Kanuszewski v. Mich. Dep't of Health & Hum. Servs.*, 927 F.3d 396, 417 (6th Cir. 2019)). "Enjoining a statewide official under *Young* based on his obligation to enforce a law is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell*, 784 F.3d at 1048. However, "[g]eneral authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation challenging the law." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) (quoting *1st Westco Corp. v. Sch. Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993)).

In this case, in holding that the Director of the Ohio Department of Public Safety (the "Director") was entitled to Eleventh Amendment immunity, the district court observed that Plaintiffs only provided two examples of the Director enforcing Ohio's liquor laws. One example was irrelevant because it concerned permitholders. The second took place more than 14 years ago. The district court determined that the "substantial time gap does not support a finding that there is a realistic possibility the Department will take similar action against the Plaintiffs here." Op. and Order, R. 33, Page ID #266–67.

On appeal, Plaintiffs do not rebut the district court's reasoning. Instead, they point to two pieces of evidence that they contend deprive the Director of his immunity under *Ex parte Young*. First, they rely on Yost's interrogatory response explaining that the Transportation Limit *could* be enforced if an individual was transporting wine into the State to unlawfully sell at retail, if the

individual was transporting illegal narcotics in addition to an excess amount of wine, or if the illegal transportation resulted in serious death or injury. Second, they cite Defendants' averment that:

> Ohio vigorously enforces its liquor control laws through the Division, the Ohio Investigative Unit, and the Liquor Control Commission. As of January 24, 2022, there are approximately 26,000 active Division-issued liquor permits held by suppliers, wholesale distributors, or retailers . . . . The Division, the Ohio Investigative Unit, and the Liquor Control Commission are tasked with ensuring that all permit holders comply with the provisions of Ohio Rev. Code Chapters 4301 and 4303, as well as Ohio Adm. Code 4301.

Appellants' Br. at 45–46 (quoting Defs.' Mot. for Summ. J., R. 53, Page ID #4084).

Neither piece of evidence is sufficient. Yost's interrogatory response suggests that the Director has "[g]eneral authority to enforce the" challenged laws, but that "is not sufficient to make government officials the proper parties to litigation challenging the law."**[2]** *Children's Healthcare is a Legal Duty*, 92 F.3d at 1416 (quoting *1st Westco*, 6 F.3d at 113). The second piece of evidence does not even show general authority to enforce the challenged laws; instead, it concerns "permit holders." Appellants' Br. at 45–46 (quoting Defs.' Mot. for Summ. J., R. 53, Page ID #4084).

Plaintiffs have not provided sufficient evidence to support a holding that there exists "a *realistic* possibility" that the Director "will take legal or administrative actions against the plaintiff's interests."**[3]** *Russell*, 784 F.3d at 1048 (emphasis added). The district court properly concluded that the Director is entitled to Eleventh Amendment Immunity.

### 3. The Constitutionality of the Direct Ship Restriction

To determine whether the Direct Ship Restriction is constitutional, the Court must examine both § 2 of the Twenty-first Amendment and the Constitution's Commerce Clause. *See*

---

**[2]**This conclusion is not inconsistent with our analysis regarding whether Miller faced a credible threat of prosecution. The Director's authority to enforce the Transportation Limit was one of several pieces of evidence that contributed to the credible threat Miller faced.

**[3]**In their brief on appeal, Defendants detail which government officials actually enforce the challenged laws, and Plaintiffs do not dispute the accuracy of Defendants' description.

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 2459 (2019). The Commerce Clause, through the so-called "dormant Commerce Clause," prohibits "States from adopting protectionist measures and thus preserves a national market for goods and services." *Id.*; *see* U.S. Const. art. I, § 8, cl. 3. Thus, under the Supreme Court's dormant Commerce Clause doctrine, "if a state law discriminates against out-of-state goods or nonresident economic actors, the law can be sustained only on a showing that it is narrowly tailored to 'advanc[e] a legitimate local purpose.'" *Tenn. Wine*, 139 S. Ct. at 2461 (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 338 (2008)).

The Commerce Clause's restriction against State protectionism is sometimes at odds with § 2 of the Twenty-first Amendment, which "delegates to each State the choice whether to permit sales of alcohol within its borders and, if so, on what terms and in what way." *Lebamoff Enters. Inc. v. Whitmer*, 956 F.3d 863, 869 (6th Cir. 2020). Thus, although the Supreme Court "has acknowledged that § 2 grants States latitude with respect to the regulation of alcohol, . . . [it] has repeatedly declined to read § 2 as allowing the States to violate the 'nondiscrimination principle'" of the dormant Commerce Clause. *Tenn. Wine*, 139 S. Ct. at 2470. To that end, the Supreme Court and this Court "have frequently said that the Twenty-first Amendment permits a three-tier system of alcohol distribution, and the Commerce Clause does not impliedly prohibit it." *Lebamoff*, 956 F.3d at 869; *see Granholm v. Heald*, 544 U.S. 460, 489 (2005) (calling the three-tier system "unquestionably legitimate"). At the same time, however, the Supreme Court has also emphasized that "the Twenty-first Amendment does not immunize all [alcohol] laws from Commerce Clause challenge." *Tenn. Wine*, 139 S. Ct. at 2470 (quoting *Heald*, 544 U.S. at 488).

With those tensions in mind, "[w]hen faced with a dormant Commerce Clause challenge to an alcohol regulation," the Court "ask[s] whether the law 'can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground.'" *Lebamoff*, 956 F.3d at 868 (quoting *Tenn. Wine*, 139 S. Ct. at 2474). "[I]f the 'predominant effect of the law is protectionism,' rather than the promotion of legitimate state interests, the Twenty-first Amendment does not 'shield[ ]' it." *Id.* (alteration in original) (quoting *Tenn. Wine*, 139 S. Ct. at 2474).

Two cases help clarify the practical application of the *Tennessee Wine* test.  The first case is *Tennessee Wine*, itself.  In that case, the Supreme Court evaluated a Tennessee law that imposed a two-year residency requirement for retail license applicants and held that because it "blatantly favors the State's residents and has little relationship to public health and safety, it is unconstitutional." *Tenn. Wine*, 139 S. Ct. at 2457.

The second case is *Lebamoff*, which was the first case in which this Court applied *Tennessee Wine*.  *Lebamoff* is similar to the case at bar because it involved a challenge to Michigan's analogue to the Direct Ship Restriction.  *See* Mich. Comp. Laws § 436.1203(3).[4] The lead opinion in *Lebamoff* framed the issue and the Court's holding as follows:  "If Michigan may have a three-tier system that requires all alcohol sales to run through its in-state wholesalers, and if it may require retailers to locate within the State, may it limit the delivery options created by the new law to in-state retailers?  The answer is yes." *Lebamoff*, 956 F.3d at 870.  However, the Court in *Lebamoff* did *not* hold that direct ship restrictions are always constitutional.  The concurring opinion, which had the support of a majority of the panel, emphasized that the Court upheld Michigan's statute because "the plaintiffs ha[d] not sufficiently refuted" the defendant's evidence indicating that the challenged statute "serves the public health." *Id.* at 877 (McKeague, J., concurring); *see also id.* at 879 ("The plaintiffs here have not produced sufficient countervailing evidence showing that these public health concerns are 'mere speculation' or 'unsupported assertions,' or that the 'predominant effect' of the in-state retailer requirement is not the protection of public health." (quoting *Tenn. Wine*, 139 S. Ct. at 2474)).

Thus, although the district court correctly observed that *Lebamoff* is "controlling," it incorrectly deemed the decision "dispositive."  Op. and Order, R. 91, Page ID #5200.  A discriminatory state liquor law will survive a dormant Commerce Clause challenge if (1)  it "can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground," and (2) its "predominant effect" is "the protection of public health or safety," rather than "protectionism," *Tenn. Wine*, 139 S. Ct. at 2474.  In *Lebamoff*, this Court held that the plaintiffs failed to provide sufficient evidence that *Michigan's* direct ship restriction failed the

---

[4]At oral argument, Plaintiffs' counsel conceded that Ohio's Direct Ship Restriction and the challenged law in *Lebamoff* are substantively similar.

*Tennessee Wine* test.  The Court did not, however, foreclose challenges to other states' direct ship restrictions.

The district court failed to consider Plaintiffs' evidence *in this case* concerning *Ohio's* Direct Ship Restriction.  Instead, it treated *Lebamoff*'s holding – which dealt with a different state's law and involved different evidence – as dispositive.  Through their cross-motions for summary judgment, the parties submitted abundant evidence, including expert reports and witness testimony, to support their arguments around the *Tennessee Wine* test.  For example, Plaintiffs provided an expert report from the Executive Director of the National Association of Wine Retailers detailing his opinion as to the practical effects of the Direct Ship Restriction on Ohio consumers.  On the other side, Defendants submitted an expert report on the public health benefits of the Direct Ship Restriction.  The district court should have considered the competing evidence and determined whether a genuine issue of material fact existed.  *See* Fed. R. Civ. P. 56(a).

The Court's holding in *Lebamoff* was expressly limited to the evidence before the Court because the plaintiffs failed to "produce[] sufficient countervailing evidence showing that [Michigan's] public health concerns are 'mere speculation' or 'unsupported assertions,' or that the 'predominant effect' of the in-state retailer requirement is not the protection of public health." *Lebamoff*, 956 F.3d at 877 (McKeague, J., concurring) (quoting *Tenn. Wine*, 139 S. Ct. at 2474)).  In this case, both parties have conflicting arguments; expert reports; and witness testimony.  Plaintiffs have submitted evidence detailing the ways in which the Direct Ship Restriction promotes protectionism, and Defendants have submitted evidence suggesting that the restriction promotes public health.  The district court should have considered how that evidence stacks up against the *Tennessee Wine* test.  We therefore reverse the district court's grant of summary judgment as to the constitutionality of the Direct Ship Restriction.

Finally, Plaintiffs summarily challenge several of the district court's evidentiary rulings, but they do not discuss the rulings in any depth or cite any relevant authority.  Accordingly, Plaintiffs have not adequately raised the issues for appellate review.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

**CONCLUSION**

For the reasons set forth above, the Court **AFFIRMS** the district court's judgment as to the Director of the Ohio Department of Public Safety's Eleventh Amendment immunity, **REVERSES** with respect to the Direct Ship Restriction and Plaintiffs' standing to challenge the Transportation Limit, and **REMANDS** for proceedings consistent with the Court's opinion. On remand, the district court shall consider the facts and evidence presented in this case and determine whether the challenged statutes (1) "can be justified as a public health or safety measure or on some other legitimate nonprotectionist ground," and whether (2) their "predominant effect" is "the protection of public health or safety," rather than "protectionism." *Tenn.* Wine, 139 S. Ct. at 2474.

---

**CONCURRING IN PART AND DISSENTING IN PART**

---

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part. I join the majority in full in holding that the district court erred in dismissing Plaintiffs' challenge to the Transportation Limit for lack of Article III standing and that the district court further erred in finding that Plaintiffs' challenge to the Direct Ship Restriction is foreclosed by *Lebamoff Enterprises Inc. v. Whitmer*, 956 F.3d 863 (6th Cir. 2020). I decline, however, to join the majority in affirming the dismissal of Miller's claim against the director of the Ohio Department of Public Safety, Andy Wilson, under the Eleventh Amendment. Because I believe that there is a realistic possibility that Wilson would enforce the Transportation Limit against Miller, I would hold that Miller's claim falls within the *Ex parte Young* exception to the Eleventh Amendment.

The applicable legal principles are not in dispute. *Ex parte Young* represents "an exception to Eleventh Amendment sovereign immunity" that applies to "claims for injunctive relief against individual state officials in their official capacities." *Diaz v. Michigan Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "Enjoining a statewide official under [*Ex parte*] *Young* based on his obligation to enforce a law is appropriate when there is a realistic possibility the official will take legal or administrative actions against the plaintiff's interests." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1048 (6th Cir. 2015).

The majority and I differ in our application of these principles. According to the majority, Miller has not shown that there is a realistic possibility that the Department of Public Safety, rather than some other arm of the Ohio government, would enforce the Transportation Limit against him. I disagree. The evidence marshalled by the majority to show that Miller has a reasonable fear of being prosecuted for violating the Transportation Limit also demonstrates

that there is a realistic possibility that any such prosecution would be initiated by the Department of Public Safety.[1]

As the majority observes, Miller has "provided evidence that Ohio *does prosecute* violations of the Transportation Limit." Maj. Op. at 11. Miller's evidence on this score consists primarily of Attorney General Yost's concession that a law-enforcement officer "could" enforce the Transportation Limit and spreadsheets documenting several arrests for alleged violations of the Transportation Limit. *See* R. 52-34 (Yost Ans. to Interrogatories ¶ 16) (Page ID #4035); R. 53-7 (Snyder Decl. ¶ 6) (Page ID #4333–37). Although Attorney General Yost does not identify the law-enforcement agency responsible for enforcing the Transportation Limit, Miller has introduced other evidence suggesting that at least some law-enforcement officers tasked with enforcing the Transportation Limit are members of the Department of Public Safety's Ohio Investigative Unit. *See* R. 68-1 (Lockhart Decl. ¶¶ 2–3, 6–7) (Page ID #4890–91). Attorney General Yost also identifies at least one other "scenario" in which the Ohio Investigative Unit would assist in enforcing the Transportation Limit, R. 52-34 (Yost Ans. to Interrogatories ¶ 16) (Page ID #4035), and Miller has introduced one law-firm webpage that cites the Ohio Investigative Unit's website, which discusses the Transportation Limit, R. 34-9 (Dayton DUI Webpage at 1) (Page ID #309).

Taken together, Miller's evidence not only shows that the Department of Public Safety has the authority to enforce the Transportation Limit. It also confirms that the Department of Public Safety "*does prosecute* violations of the Transportation Limit." Maj. Op. at 11. And it makes clear that there are "times when the State" and the Department of Public Safety "could, and potentially would, prosecute a wine consumer for violating the Transportation Limit." *Id.* Given this evidence as well as Miller's desire to transport wine across Ohio state lines, the

---

[1]Although the legal standard governing whether a plaintiff has Article III standing to pursue a pre-enforcement challenge is not identical to the standard governing whether the *Ex parte Young* exception to the Eleventh Amendment applies, the two standards may run together in some cases. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1047 (6th Cir. 2015) (remarking that "[i]t would be a perverse reading of [*Ex parte*] *Young* to say that, although [a plaintiff] might have an Article III injury before the [state official] directly communicates his intent to prosecute him, the Eleventh Amendment would nonetheless simultaneously bar us from enjoining the [state official's] initiating a prosecution"). This is one such case. Miller has demonstrated a reasonable fear of prosecution and has shown that there is a realistic possibility that any such prosecution would be initiated by Wilson and the Department of Public Safety.

majority and I agree that Miller reasonably fears prosecution under the Transportation Limit. I further believe, in contrast to the majority, that there is a realistic possibility that Miller would be prosecuted by Wilson and the Department of Public Safety if he brought into Ohio more wine than permitted under the Transportation Limit. Accordingly, I would hold that the *Ex parte Young* exception to the Eleventh Amendment applies and I would reverse the district court's dismissal of Miller's claim against Wilson.

The majority and I disagree on the narrow issue of whether the *Ex parte Young* exception to the Eleventh Amendment applies to Miller's claim against Wilson, but we are unanimous in holding that the district court erred in dismissing Miller's challenge to the Transportation Limit for lack of standing and in granting summary judgment to Defendants with respect to Plaintiffs' challenge to the Direct Ship Limit. Accordingly, I concur in part and respectfully dissent in part.