# United States Court of Appeals
## For the First Circuit

No. 22-1843

KAMBIS ANVAR and MICHELLE DRUM,

Plaintiffs, Appellants,

v.

ELIZABETH K. DWYER, in her official capacity as Interim Director
of RI Department of Business Regulation; PETER F. NERONHA, in
his official capacity as Attorney General of Rhode Island; and
RHODE ISLAND RESPONSIBLE BEVERAGE ALCOHOL COALITION, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Montecalvo, Selya, and Thompson,
Circuit Judges.

James A. Tanford, with whom Robert D. Epstein and Epstein
Seif Porter & Beutel, LLP were on brief, for appellants.
Michael W. Field, Assistant Attorney General, with whom
Katherine Connolly Sadeck, Assistant Attorney General, was on
brief, for appellees Dwyer and Neronha.
Deborah A. Skakel, with whom Blank Rome LLP, Gerald J. Petros,
Ryan M. Gainor, and Hinckley Allen & Snyder LLP were on brief, for
appellee Rhode Island Responsible Beverage Alcohol Coalition, Inc.
John C. Neiman, Jr. and Maynard Nexsen PC on brief for Center
for Alcohol Policy, amicus curiae.

Jacob Hegeman, Frederick R. Yarger, Teresa G. Akkara, and Wheeler Trigg O'Donnell LLP on brief for Wine & Spirits Wholesalers of America, Inc. and American Beverage Licensees, amici curiae.

---

September 7, 2023

---

**SELYA**, **Circuit Judge**. This appeal arises out of a challenge to Rhode Island's liquor laws on the ground that consumers are denied access to alcohol deliveries from out-of-state retailers in violation of the Commerce Clause. See U.S. Const. art. I, § 8, cl. 3. With respect to alcoholic beverages, the Twenty-first Amendment, see U.S. Const. amend. XXI, § 2, adds a gloss to the Commerce Clause — and we have not had the occasion to visit this arcane corner of constitutional jurisprudence following the Supreme Court's instructive opinion in Tennessee Wine & Spirits Retailers Association v. Thomas, 139 S. Ct. 2449 (2019). Other circuits, though, have grappled with similar circumstances, and they have not been uniform in gauging the reach of Tennessee Wine. Compare, e.g., Block v. Canepa, 74 F.4th 400, 414 (6th Cir. 2023), with B-21 Wines, Inc. v. Bauer, 36 F.4th 214, 229 (4th Cir. 2022), cert. denied, 143 S. Ct. 567 (2023). Consequently, we proceed with caution, deciding only the narrow issue that this appeal presents. After careful consideration, we affirm the district court's judgment in part, vacate it in part, and remand for further proceedings consistent with this opinion.

## I

We briefly rehearse the background facts and travel of the case.

## A

Rhode Island, like many states, controls the distribution of alcohol within its borders through what is commonly described as a three-tier system. The state issues licenses specific to the manufacture, wholesale, or retail of alcohol, thereby maintaining a distinction between each tier of the alcohol supply chain. See R.I. Gen. Laws § 3-5-1. Manufacturers and wholesalers are licensed by the Rhode Island Department of Business Regulation (DBR). See id. § 3-5-14.1. Each such licensee is required both to maintain a physical premises within the state, see id. §§ 3-6-1, -9 to -11, and to be a distinct economic entity such that no manufacturer has an interest in the business of a wholesaler, see id. § 3-6-15.

The licensing of retailers is left to local municipalities. See id. § 3-5-15. The retailers, too, must have a physical presence within the state, see id. §§ 3-7-1, -3; 230-30-10 R.I. Code R. § 1.4.27, and they must remain separate and apart from the interests of any manufacturer or wholesaler, see R.I. Gen. Laws § 3-7-22(a). Licenses may issue only to Rhode Island residents or companies authorized to do business in the state. See id. § 3-5-10.

Within this three-tier system, alcoholic beverages sold to consumers are first funneled through in-state wholesalers. They are the only entities allowed to sell alcohol to licensed Rhode

Island retailers. See id. § 3-7-18. And they alone can receive shipments of alcoholic beverages from outside the state. See id. § 3-4-8.

This regulatory scheme does admit one exception: consumers may buy alcohol for a non-business purpose from an in-state or out-of-state manufacturer and have it shipped directly to their home by common carrier if the purchase is made in person on the manufacturer's premises. See id. Save for this exception, consumers purchase alcoholic beverages only from licensed retailers, who are permitted to sell them either in person, by phone, or over the internet.[1] See id. §§ 3-7-1, -3; 230-30-10 R.I. Code R. § 1.4.10. Those retailers are also permitted to deliver a consumer's purchases directly to her as long as the delivery is made by the retailer (or by an employee of the retailer) during lawful business hours. See 230-30-10 R.I. Code R. § 1.4.10. Delivery by common carrier is forbidden. See id. Because Rhode Island issues licenses only to in-state retailers, Rhode Island consumers cannot avail themselves of similar deliveries from

_____

[1] Rhode Island makes available various classes of retail-level liquor licenses. Many of these licenses are applicable only to specific types of businesses. See, e.g., R.I. Gen. Laws § 3-7-15 (authorizing licenses for railroad, marine, and air carriers); id. § 3-7-16 (authorizing licenses for convention halls). Our discussion primarily relates to the (most general) "Class A" type of retail license. See id. §§ 3-7-1, -3.

out-of-state retailers (even those whose shops are very close to the Rhode Island border).

## B

Against this backdrop, we turn to the case at hand. Plaintiffs-appellants Kambis Anvar and Michelle Drum are Rhode Island wine consumers who allege that they would purchase wine from out-of-state retailers and have it delivered to their homes if that course of action was not prohibited by state law. In October of 2019, they sued Elizabeth K. Dwyer, in her official capacity as the Interim Director of the DBR, and Peter F. Neronha, in his official capacity as the Rhode Island Attorney General, in the United States District Court for the District of Rhode Island. The plaintiffs entreated the district court to declare the challenged liquor laws unconstitutional and to enjoin their enforcement. Subsequently, the Rhode Island Responsible Beverage Alcohol Coalition, Inc., an association of Rhode Island alcohol wholesalers, intervened as a party-defendant to protect the interests of its members. See Fed. R. Civ. P. 24.

In due course, the parties cross-moved for summary judgment. See Fed. R. Civ. P. 56(a). The plaintiffs argued that Rhode Island's alcohol control regime discriminates against out-of-state retailers in violation of the Commerce Clause because those retailers cannot sell and deliver alcohol purchased from out-of-state wholesalers to Rhode Island consumers, nor can they

deliver those potential purchases by common carrier.[2]  The defendants, in turn, asserted that Rhode Island's laws are either nondiscriminatory or an appropriate exercise of the state's authority under the Twenty-first Amendment.

After hearing oral argument and mulling the parties' competing contentions, the district court held that requiring retailers to establish a physical presence within the state to sell and deliver alcohol was allowed under the Twenty-first Amendment because the physical-presence requirement was essential to the state's three-tier system and, thus, necessary to "promote[] the health and safety of Rhode Islanders." Anvar v. Dwyer, 633 F. Supp. 3d 592, 599 (D.R.I. 2022).  In upholding the in-state-presence requirement for retailers, the court did not examine concrete evidence to discern the effectiveness of that requirement in promoting public health and safety.  The court also upheld, on similar grounds, the requirement that licensed retailers purchase alcohol only from licensed in-state wholesalers.  See id.

---

[2] At the outset, the plaintiffs' complaint also challenged laws limiting the amount of alcohol a consumer may physically carry into the state.  See R.I. Gen. Laws §§ 3-1-1(9), -4-1.  The plaintiffs later abandoned that argument and, therefore, cannot resurrect it on appeal.  See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

As to the plaintiffs' challenge to the requirement that retailers deliver alcohol themselves (as opposed to arranging for delivery of customer purchases by common carrier), the district court determined that the relevant laws do not discriminate against out-of-state retailers because no retailer, regardless of location, is permitted to deliver alcohol by common carrier. See id. The court did not address whether the common-carrier restriction, although neutral on its face, has a discriminatory effect or purpose.

When all was said and done, the district court granted the defendants' motion for summary judgment and denied the plaintiffs' cross-motion. This timely appeal followed.

**II**

We review an order granting or denying summary judgment de novo. See Minturn v. Monrad, 64 F.4th 9, 13 (1st Cir. 2023). "The pendency of cross-motions for summary judgment does not alter the standard of review." Conlogue v. Hamilton, 906 F.3d 150, 154 (1st Cir. 2018). "Cross motions simply require us to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

The Constitution grants Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. Encompassed within that affirmative grant of power is, by negative implication, a concomitant command that "prevents states from creating protectionist barriers to interstate trade." Fam. Winemakers of Cal. v. Jenkins, 592 F.3d 1, 9 (1st Cir. 2010). Under this concomitant command, familiarly known as the dormant Commerce Clause, a state law that discriminates against either interstate goods or non-resident actors can be upheld only if it "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives." Dep't of Revenue of Ky. v. Davis, 553 U.S. 328, 338 (2008) (quoting Or. Waste Sys., Inc. v. Dep't of Env't Quality of Or., 511 U.S. 93, 101 (1994)); see Ne. Patients Grp. v. United Cannabis Patients & Caregivers of Me., 45 F.4th 542, 546 (1st Cir. 2022).

Even so, states are afforded greater leeway when regulating alcohol because of the authority granted to them by the Twenty-first Amendment. See Tenn. Wine, 139 S. Ct. at 2470. Section 2 of the Twenty-first Amendment provides:

> The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited.

U.S. Const. amend. XXI, § 2. Given its plain meaning, section 2 seems to stand in tension with the dormant Commerce Clause. But — notwithstanding the broad sweep of its text — section 2 has been authoritatively construed "as one part of a unified constitutional scheme," Tenn. Wine, 139 S. Ct. at 2462, so that state laws promulgated under its auspices must nevertheless conform to the "nondiscrimination principle" latent in the dormant Commerce Clause, id. at 2470 (quoting Granholm v. Heald, 544 U.S. 460, 487 (2005)).

It follows, we think, that when assessing whether a state's law regulating alcohol runs headlong into the dormant Commerce Clause, a court first must determine whether the challenged law discriminates — either on its face, in effect, or in purpose — against interstate commerce. See Or. Waste Sys., Inc., 511 U.S. at 99; Fam. Winemakers of Cal., 592 F.3d at 9-10, 13. If it does, the inquiry then shifts to whether the challenged law "serve[s] a State's legitimate [section] 2 interests" such as addressing "the public health and safety effects of alcohol use." Tenn. Wine, 139 S. Ct. at 2469, 2474. To prove as much, the state may not rely on either "mere speculation" or "unsupported assertions" but, rather, must proffer "concrete evidence" demonstrating that the main effect of the law is the advancement of, say, public health and safety, not economic protectionism.

- 10 -

Id. at 2474 (quoting Granholm, 544 U.S. at 490, 492).  If the law's predominant effect is protectionist in nature, such that it cannot be upheld under the Twenty-first Amendment, the court must then determine whether the law "advances a legitimate local purpose that cannot be adequately served by reasonable nondiscriminatory alternatives."  Granholm, 544 U.S. at 489 (quoting New Energy Co. of Ind. v. Limbach, 486 U.S. 269, 278 (1988)).

**IV**

With this legal framework in place, we move from the general to the specific.  The plaintiffs asseverate that Rhode Island's issuance of licenses only to retailers who maintain a physical presence within the state unconstitutionally discriminates against out-of-state retailers who are thus prohibited from delivering alcohol directly to Rhode Island consumers.  See R.I. Gen. Laws §§ 3-4-8, -5-1, -7-1, -7-3; 230-30-10 R.I. Code R. § 1.4.27.  And if that prohibition is unlawful — their thesis runs — so, too, is the requirement that retailers make deliveries themselves (instead of through common carrier) because out-of-state retailers would be put at an unfair logistical disadvantage in comparison to in-state retailers when making those deliveries.  See R.I. Gen. Laws § 3-4-8; 230-30-10 R.I. Code R. § 1.4.10.  We address each of these asseverations in turn.

We first pause to note, though, that the plaintiffs do not appeal the district court's determination that Rhode Island's requirement that licensed retailers purchase alcohol only from licensed in-state wholesalers, see R.I. Gen. Laws § 3-7-18, is valid under the Twenty-first Amendment. The plaintiffs make no mention of the relevant provision in their opening brief and — although they argue against that requirement in their reply brief — that is too little and too late. It is settled beyond hope of contradiction that arguments appearing for the first time in an appellant's reply brief are deemed waived. See FinSight I LP v. Seaver, 50 F.4th 226, 235 (1st Cir. 2022); Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990). Accordingly, we affirm the district court's entry of summary judgment insofar as it addresses the constitutionality of section 3-7-18, and we limit our review to those issues properly before us.

**A**

Rhode Island law facially discriminates against out-of-state retailers by authorizing the issuance of retail licenses exclusively to state residents or in-state businesses. See R.I. Gen. Laws §§ 3-5-1, -5-10, -7-1, -7-3. So, too, it facially discriminates against out-of-state retailers by requiring such licensees to maintain a physical presence within the state. See 230-30-10 R.I. Code R. § 1.4.27. Due to those restrictions, out-of-state retailers cannot sell or deliver alcoholic beverages

- 12 -

to Rhode Island residents within the borders of the state (as Rhode Island retailers can).

Despite that impediment to interstate commerce, the district court upheld the in-state-presence requirement on the ground that it is integral to Rhode Island's three-tier system of alcohol regulation and, thus, a valid exercise of the state's authority under the Twenty-first Amendment. See Anvar, 633 F. Supp. 3d at 598-99. In announcing this holding, the court relied in part on a Supreme Court dictum describing the three-tier system of alcohol regulation in favorable terms. See id.

We do not gainsay that the Supreme Court has, in the past, described the implementation of a three-tier system as an appropriate use of a state's authority under the Twenty-first Amendment. See Granholm, 544 U.S. at 489 ("We have previously recognized that the three-tier system itself is 'unquestionably legitimate.'" (quoting North Dakota v. United States, 495 U.S. 423, 432 (1990))); see also Cherry Hill Vineyard, LLC v. Baldacci, 505 F.3d 28, 30 (1st Cir. 2007).[3] But the Court, of late, has

_____

[3] Historically, the three-tier system was adopted by states to curb excessive alcohol consumption engendered by the "tied-house" system — an economic arrangement under which alcohol producers staked saloonkeepers to premises and equipment in exchange for their agreement to sell the producer's product exclusively (and often excessively). See Tenn. Wine, 139 S. Ct. at 2463 n.7. The three-tier system sought to prevent the resultant harm to the public health by foreclosing vertical integration in the supply chain for alcohol distribution. See id.

cautioned that the Twenty-first Amendment does not necessarily "sanction[] every discriminatory feature that a State may incorporate into its three-tiered scheme." Tenn. Wine, 139 S. Ct. at 2471. Each state's variation of the three-tier system, then, "must be judged based on its own features." Id. at 2472.

Here, the district court concluded that the in-state-presence requirement is an essential feature of Rhode Island's three-tier system because it allows state officials to conduct on-site inspections to ensure compliance with the law. See Anvar, 633 F. Supp. 3d at 599. But the court arrived at that conclusion based on an expert report affirming that principle in the abstract, together with the naked fact that retailers are required by law to maintain certain sales records for inspection. See R.I. Gen. Laws § 3-7-28. At no point did the court engage with any "concrete evidence" as to how the in-state-presence requirement furthers the legitimate aims of the Twenty-first Amendment. Tenn. Wine, 139 S. Ct. at 2474 (quoting Granholm, 544 U.S. at 490). For instance, the court made no mention of whether such enforcement actions actually take place, whether such efforts have effectively curtailed behavior deleterious to the public health, or whether the requirement has tangibly benefited public health and safety in some other way.

Nor did the district court explicitly consider whether the plaintiffs' arguments or proffered evidence were sufficient to

rebut the defendants' stated justification for the in-state-presence requirement. Cf. Lebamoff Enters. Inc. v. Whitmer, 956 F.3d 863, 879 (6th Cir. 2020) (McKeague, J., concurring) (upholding alcohol regulation because plaintiffs failed to produce "sufficient countervailing evidence" rebutting state's showing that law promoted public health). The plaintiffs offer data and reports ostensibly demonstrating that states that allow out-of-state retail deliveries of alcohol do not experience a corresponding erosion in public health and safety. They also insist that Rhode Island's rationale for imposing an in-state-presence requirement on retailers is undercut by the exception available to out-of-state manufacturers, who can deliver directly to consumers as long as consumers make their purchases from the manufacturer's premises. See R.I. Gen. Laws § 3-4-8. Whether this showing outweighs the defendants' offer of proof is a matter to be decided in the first instance by the district court. See Block, 74 F.4th at 414 (remanding to district court to assess evidence within framework erected by Tennessee Wine).

The short of it is that a discriminatory aspect of a state's version of the three-tier system cannot be given a judicial seal of approval premised either on the virtues of three-tier systems generally or on the basis of a theoretical benefit to public health and safety associated with the challenged regulation. See Tenn. Wine, 139 S. Ct. at 2474-75. After all,

- 15 -

there is nothing inherent in the three-tier system — which aims at preventing vertical integration between alcohol producers, wholesalers, and retailers — that necessarily demands an in-state-presence requirement for retailers. See B-21 Wines, Inc., 36 F.4th at 235 (Wilkinson, J., dissenting) ("One can easily imagine a state maintaining a strict licensing regime to ensure that the tiers remain distinctly owned, while treating in-state and out-of-state retailers alike."). But see id. at 229 (upholding in-state retailer requirement as integral to three-tier system); Sarasota Wine Mkt., LLC v. Schmitt, 987 F.3d 1171, 1185 (8th Cir. 2021) (same). Such a requirement — if it is to be sanctioned — must be supported by "concrete evidence" demonstrating that its predominant effect advances the goals of the Twenty-first Amendment and not merely the protection of in-state business interests. Tenn. Wine, 139 S. Ct. at 2474 (quoting Granholm, 544 U.S. at 490); see Block, 74 F.4th at 414.

## B

We add a coda. The plaintiffs argue vociferously that the district court applied the wrong legal standard by not considering whether nondiscriminatory alternatives to the challenged laws were available. That argument, however, conflates the proper Twenty-first Amendment inquiry with a traditional analysis under the dormant Commerce Clause. See supra Part III. The district court may find the existence of alternatives relevant

in assessing whether the challenged laws in fact promote public health and safety, but the mere existence of possible alternatives does not, for purposes of a Twenty-first Amendment inquiry, necessarily invalidate a challenged law. See B-21 Wines, Inc., 36 F.4th at 225-26 ("Although consideration of nondiscriminatory alternatives could have some relevance to [the Twenty-first Amendment] inquiry, it does not transform the applicable framework into the test that ordinarily applies to a dormant Commerce Clause challenge when the Twenty-first Amendment is not implicated.").

## C

That ends this aspect of the matter. We vacate the district court's entry of summary judgment as to the constitutionality of the in-state-presence requirement for retailers, and we remand that issue for a fuller consideration of the parties' respective offers of proof. The district court may, of course, take additional evidence on this issue if it sees fit.

## V

The plaintiffs concede that their challenge to Rhode Island's common-carrier restriction, see R.I. Gen. Laws § 3-4-8; 230-30-10 R.I. Code R. § 1.4.10(A)-(B), is conditioned upon a finding of unconstitutionality with respect to the in-state-presence requirement for retailers. If out-of-state retailers cannot sell and deliver alcohol into the state, it does not much matter whether they are prevented from making such

hypothetical deliveries by common carrier. But if the district court determines on remand that the in-state-presence requirement for retailers is unconstitutional, a separate inquiry must then be mounted to determine the constitutionality of the common-carrier restriction.

Below, the district court — despite upholding the in-state-presence requirement — proceeded to address the plaintiffs' challenge to the common-carrier restriction. The court ruled that the latter requirement was nondiscriminatory because the relevant statutory and regulatory provisions made no distinction between in-state and out-of-state retailers. See Anvar, 633 F. Supp. 3d at 599. That portion of the district court's judgment also must be vacated. We explain briefly.

Even if a law does not appear to be discriminatory on its face, it still may have a discriminatory effect if "it affects similarly situated entities in a market by imposing disproportionate burdens on out-of-state interests and conferring advantages upon in-state interests." Fam. Winemakers of Cal., 592 F.3d at 10. So, too, a law may be discriminatory in its purpose if it is "motivated by an intent to discriminate against interstate commerce." Id. at 13. As a threshold matter, though, it is incumbent upon the plaintiffs to provide proof of any allegedly discriminatory effect or purpose. See id. at 9.

Should the district court deem the in-state-presence requirement unconstitutional — a matter on which we take no view — it must then reassess whether the plaintiffs have sufficiently demonstrated that the common-carrier restriction has a discriminatory effect or purpose. See id. at 10, 13. If so, the court must proceed to analyze whether the law is a permissible exercise of Rhode Island's authority under the Twenty-first Amendment. See Tenn. Wine, 139 S. Ct. at 2474-75.

## VI

We need go no further. For the reasons elucidated above, the judgment of the district court is affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. All parties shall bear their own costs.

**So Ordered**.